Entered on Docket
January 22, 2014
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes
the order of the court. Signed January 22, 2014

_Charles Novack_
Charles Novack
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>MAX SYED MALIHI,<br>    Debtor. | Case No. 11-56253 CN<br>Chapter 7 |
| MAHMOOD KUCHAKI RAFSANJANI,<br>    Plaintiff,<br>vs.<br>MAX SYED MALIHI,<br>    Defendant. | Adversary No. 11-5241<br><br>**MEMORANDUM DECISION** |

    On August 15, 2011, plaintiff Mahmood Kuchaki Rafsanjani ("Kuchaki") commenced this adversary proceeding against defendant Max Syed Malihi ("Malihi") seeking a non-dischargeable judgment as well as the denial of his chapter 7 discharge under Bankruptcy Code §§ 523(a)(2)(A), 523(a)(4) and §727(a)(4), respectively. This court conducted a trial in this adversary proceeding on August 27 and 28, 2013. This memorandum decision constitutes this court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

    Malihi and Kuchaki met over 25 years ago as college students in their native Iran. They lost

touch after they immigrated to the United States in the mid-1980's, but they rekindled their friendship in 1997. Although they initially lived in different states (Kuchaki in California and Malihi in Florida and Arizona) they stayed in near constant contact, speaking regularly on the phone and periodically visiting each other.

After immigrating to the United States, Malihi worked in construction and owned and operated several home restoration and remodeling businesses. Kuchaki also became a small business owner, at one point operating a limousine service and restaurant. As discussed below, their relative success led to several financial transactions between them, which are the genesis of Kuchaki's non-dischargeable claims for relief in this adversary proceeding.

*Section 523 Claims For Relief*

### The South Carolina Transaction

In August 2005, Malihi and Kuchaki discussed Kuchaki's possible participation in a South Carolina real estate transaction that Malihi was considering. The terms of Kuchaki's investment were scanty. The parties did agree, however, that Kuchaki would provide Malihi with $100,000 which Malihi would use to purchase several parcels of South Carolina real property. Malihi, who had already obtained buyers for some of these parcels, would then flip the property and return Kuchaki's original investment with some profit. Malihi testified that at least two other individuals invested in this deal.

Malihi and Kuchaki's agreement was strictly verbal, and they never discussed several critical details, including the amount of "profits" that Kuchaki would receive and when Kuchaki would receive these profits (plus the return of the original $100,000 investment). Notwithstanding these deficiencies, Kuchaki provided Malihi with a $100,000 cashier's check on September 1, 2005, which Malihi then used to purchase the South Carolina parcels. Approximately six months later, Malihi sold the parcels and realized a $48,000 profit. Malihi thereafter paid $10,000 to Kuchaki as his share of the profits.

After he received these funds, Kuchaki - who believed that Malihi was actively searching for additional real estate investments - authorized Malihi to re-invest his $100,000 principal in other real

**MEMORANDUM DECISION**

estate deals.[1] This authorization, too, was not reduced to writing.

Malihi never returned Kuchaki's $100,000 principal. Over the next few years, Malihi regularly informed Kuchaki that his money was invested in Florida real property that Malihi was rehabilitating. Malihi did not, however, invest Kuchaki's funds in Florida real estate. Instead, Malihi used the money to support himself while he pursued unrelated business ventures. By late 2007, Malihi had spent all of Kuchaki's principal.

### The Business Loan

Malihi moved from Arizona to San Jose, California at Kuchaki's suggestion in 2007. Malihi lived with Kuchaki for several months while he considered his next business venture. In November 2007, Kuchaki agreed to loan $50,000 to Malihi to help capitalize a home repair and remodeling business (the "Business Loan"). Kuchaki transferred these funds to Malihi in three installments: (I) $10,000 on December 10, 2007; (ii) $20,000 on January 2, 2008, and (iii) $20,000 on March 27, 2008. Consistent with their prior business deals, the parties never documented the Business Loan and did not discuss an interest rate or maturity date. Malihi never repaid the Business Loan.

### The Truck Sale

In November 2007 Kuchaki's limousine business - Rainbow Limousine Services, Inc. - agreed to sell a 2004 Toyota Tundra Truck (the "Truck") to Malihi for $15,000. For reasons that were inadequately explained during trial, the parties structured the sale in the following, convoluted manner: First, Kuchaki transferred $10,000 to Malihi for the explicit purpose of "purchasing" the Truck from Rainbow. Rainbow then sold the Truck to Malihi for $10,000, which Malihi paid with the aforementioned $10,000. The $15,000 debt to Kuchaki arose only after Malihi took title to the Truck in his own name. Again, the parties never discussed interest rate or repayment terms, and the loan was left unwritten. Malihi did not make any payments other than the initial $10,000 transfer. Malihi sold the Truck in 2009, and he retained all of the proceeds.

### The Residential Lease

In August 2008, Malihi began renting a single family residence owned by Kuchaki for $2000

---

[1] Malihi did not have any other potential real estate investments at that time.

3

**MEMORANDUM DECISION**

per month. The lease was a verbal agreement with no fixed term. While Malihi lived in the property for approximately ten months, he stopped paying rent after five months.

### The State Court Litigation

On July 16, 2009, Kuchaki sued Malihi in Santa Clara Superior Court to recover the unpaid rent and all other funds he had invested with or loaned to Malihi. In January 2011, the parties signed a stipulated judgment in which Malihi agreed to pay Kuchaki $230,000, plus 6.5% interest, over a five-year term. The $230,000 amount included the $100,000 real estate investment, the outstanding Business Loan balance, $10,000 in unpaid rent, the $15,000 "debt" arising from the Truck sale, and accrued interest.

*Section 727 Claims For Relief*

Kuchaki also seeks to deny Malihi his Chapter 7 discharge. The facts behind these claims for relief are discussed below.

### The MJ12 Business

In 2008, Malihi was operating a home restoration business located in the same shopping plaza as a coffee shop owned and operated by Jengshin Lee ("Lee"). Lee's coffee shop suffered significant water damage in 2008, and she hired Malihi for the repair work. The two became friends, and they thereafter formed their own home restoration and remodeling business, "MJ12," which Lee incorporated in August 2009. Lee provided $50,000 in start-up capital, and she managed the accounting and administrative end of the business. She was the sole shareholder. Malihi, in turn, performed the actual restoration and remodeling work. By mid- 2010, Lee had invested more than $200,000 into the business, and it became apparent that the business needed additional capital which she could not supply. Malihi asked Fred Djahandideh ("Djahandideh"), his business partner in another, unrelated venture, to invest in MJ12, and he agreed to invest $250,000 for a 50% stake in the company (the "Original Shareholder Agreement"). Not surprisingly, the Original Shareholder Agreement was not reduced to writing.

Djahandideh funded the first $150,000 in May/June 2010 without incident, but then balked at providing the final $100,000. Djahandideh informed Lee and Malihi that his final $100,000 was conditioned on amending the Original Shareholder Agreement. Djahandideh wanted to convert the

4

MEMORANDUM DECISION
Case: 11-05241   Doc# 94   Filed: 01/22/14   Entered: 01/22/14 14:19:08   Page 4 of 13

final $100,000 infusion into a loan, demanded a 51% ownership stake in MJ12, insisted that Lee reduce her equity interest to 10%, and required that Malihi - who previously had no equity interest and had not made any capital investment - own 39% of the company. With the company desperate for cash, Lee reluctantly agreed to Djahandideh's terms, and on June 15, 2010, Lee, Djahandideh and Malihi executed a written shareholder agreement (the "First Amended Shareholder Agreement").

One month later, Lee realized that she could not abide by the First Amended Shareholder Agreement. She so informed Djahandideh and demanded that he buyout her equity interest and assume her managerial responsibilities. Djahandideh agreed to rescind the First Amended Shareholder Agreement, and, in mid-August 2010, Lee and Djahandideh executed a revised shareholder agreement (the "Second Amended Shareholder Agreement"). While Malihi also signed the Second Amended Shareholder Agreement, he did so as a "witness" rather than as a shareholder.

Malihi filed his Chapter 7 bankruptcy on June 30, 2011. He did not list any past or present equity interest in MJ12 in his Bankruptcy Schedule B or Statement of Financial Affairs.

**The Omid and Pars Ventures**

Malihi started two separate land development ventures in 2005, Omid, LLC ("Omid") and Pars Group Design and Development, LLC ("Pars"). Omid, which was jointly owned by Malihi and Ebrahim Mostoufi ("Mostoufi"), held South Carolina, Florida, and Arizona real property. Pars was jointly owned by Malihi and Djahandideh, and it was created to own and develop Arizona land. For reasons that were not made clear at trial, in late 2007, Mostoufi sued Malihi, Djahandideh, and Pars (among others) in state courts in Florida, South Carolina, and Arizona (the "Mostoufi Claims"). Malihi did not respond to these complaints, and multiple default judgments were entered against him. Malihi thereafter settled the Mostoufi Claims, and in so doing disclaimed any interest in Omid, Pars, and the properties owned by these entities. Although Malihi listed the Mostoufi Claims on his Bankruptcy Schedule F, his schedules did not, however, disclose any interest in Pars, Omid, or any related properties.

Notwithstanding Malihi's assertions that he had settled the Mostoufi Claims, Mostoufi timely filed an adversary proceeding against Malihi (A.P. # 11-05280) asserting claims under Bankruptcy

5

**MEMORANDUM DECISION**

Code §§727(c), (d), (e) and 523(a)(2) and (a)(6). On August 17, 2012, Mostoufi filed an application to compromise his adversary proceeding against Malihi. The settlement terms again required Malihi (along with Pars and Omid) to transfer their purported real property interests to certain Mostoufi controlled entities. In response to the proposed compromise, the Chapter 7 Trustee, on August 27, 2012, withdrew his no asset report which he had filed on November 19, 2011.

While this court initially denied the application to compromise Mostoufi's adversary proceeding by order dated November 11, 2012, Mostoufi dismissed his adversary proceeding with prejudice on March 28, 2013, with this court's consent. One month earlier, the Chapter 7 Trustee, presumably after reviewing Mostoufi's allegations, filed a second, no asset report.

## LEGAL DISCUSSION

### I.  The §727(a)(4) Claims

This court may deny a Chapter 7 debtor's discharge under Bankruptcy Code § 727(a)(4) if (1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently. Kuchaki must establish these elements by a preponderance of the evidence. *In re Retz*, 606 F.3d 1189, 1197 (9th Cir. 2010) (*citing Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005). Moreover, "objections to discharge under 11 U.S.C. § 727 are to be literally and strictly construed against the creditor and liberally in favor of the debtor." *In re Coombs*, 193 B.R. 557, 560 (Bankr. S.D. Cal. 1996) (*quoting In re Bodenstein*, 168 B.R. 23, 27 (Bankr. E.D.N.Y. 1994)).

Errors and omissions from a debtor's bankruptcy schedules and statements can constitute false oaths under §727(a)(4). *Retz*, 606 F.3d at 1197; *Searles*, 317 B.R. at 377; *Roberts*, 331 B.R. at 882. *See also,* 28 U.S.C. § 1746; Fed. R. Bankr.P. 1008. Under Bankruptcy Code § 727(a)(4)(A), a fact is material "if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *In re Khalil*, 379 B.R. 163, 173 (9th Cir. BAP 2007) (citations omitted). An omission or misstatement that "detrimentally affects administration of the estate" is material. *In re Wills*, 243 B.R. at 63 (*citing* 6 Lawrence P. King et al., Collier on Bankruptcy ¶ 727.04[1][b] (15th ed. rev.1998)). Additionally, a debtor must act "knowingly" when making a false oath. *In re*

6

*Roberts*, 331 B.R. at 882; *see also* 11 U.S.C. § 727(a)(4)(A). "A debtor acts knowingly if he or she acts deliberately and consciously." (*In re Retz*, 606 F.3d at 1198 (*quoting In re Khalil*, 379 B.R. at 173); Black's Law Dictionary 888 (8th ed. 2004) ("A person acts knowingly if he or she acts deliberately and consciously").

To demonstrate the requisite fraudulent intent, Kuchaki must establish that Malihi made the representations or omissions at issue, knew they were false when they made them, and made them with the intention and purpose of deceiving the creditors. *In re Retz,* 606 F.3d at 1198-1999; *Khalil*, 379 B.R. at 173. Intent is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct. *Devers v. Bank of Sheridan, Mont. (In re Devers)*, 759 F.2d 751, 753-54 (9th Cir.1985).

### A. Failure to Disclose Interest in MJ12

At trial, Kuchaki emphasized that Malihi had been an officer of MJ12, and was listed as the corporate secretary in certain filings with the California Secretary of State. A corporate officer does not equate with being a shareholder, and this court assigns little weight to this fact. Kuchaki also argues that Malihi's extensive expertise in home restoration and construction and Lee's relative lack of experience in the field demonstrates that Malihi must have had an ownership interest in MJ12. Malihi's home repair experience also is not determinative of whether Malihi had an equity interest in MJ12. Lee ran a successful coffee shop, and she invested more than $210,000 in MJ12, while Malihi's capital contribution was zero. These facts carry far more weight than those pursued by Kuchaki.

While the First Amended Shareholder Agreement did purportedly grant Malihi a significant equity interest in MJ12, this court believes that the subsequent events that culminated in the Second Amended Shareholder Agreement truthfully reflects the parties' intent not to provide Malihi with an equity interest in MJ12. While there are certain inconsistencies regarding when the parties signed or witnessed the Second Amended Shareholder Agreement, this court does not question its authenticity and accuracy (Lee and Malihi both authenticated the document and consistently testified regarding the reason for its execution and its meaning). It is important to remember that these parties routinely failed to document agreements, and it is understandable that some aspects of the Second Amended

7

**MEMORANDUM DECISION**
Case: 11-05241    Doc# 94    Filed: 01/22/14    Entered: 01/22/14 14:19:08    Page 7 of 13

Shareholder Agreement are not perfect. Moreover, Malihi did not invest any capital in MJ12, and it therefore it is not surprising that he was solely a salaried employee. Simply, Kuchaki has not demonstrated by a preponderance of the evidence that Malihi was an equity owner of MJ12 when he filed his Chapter 7 on June 30, 2011.

There is also insufficient evidence for this court to conclude that the Second Amended Shareholder Agreement was calculated to defraud Malihi's creditors. To the extent that the First Amended Shareholder Agreement created an equity interest for Malihi, Malihi held it only for two months, and the First Amended Shareholder Agreement was rescinded not to hinder, delay or defraud any creditor but to address Lee's concerns and to prevent her from abandoning MJ12. Accordingly, Kuchaki has not established each element of his §727(a)(4) claim that Malihi knowingly failed to disclose an ownership interest in MJ12 on his Schedule B or Statement of Financial Affairs.

### B. Failure to Disclose Interests in Omid and Pars

Mostoufi's application to compromise his adversary proceeding is Kuchaki's sole evidence that Malihi made a false oath by failing to disclose interests in Pars and Omid. This scant evidence does not establish by a preponderance of the evidence that Malihi held any interest in Pars and/or Omid, let alone prove the requisite level of intent.

First, the compromise application does not establish that Malihi had any remaining interests in Pars, Omid, or any related properties. No corporate or title documents of any kind were introduced into evidence to establish this allegation. Indeed, Malihi testified that he discarded any interests when he settled the state court cases with Mostoufi. Kuchaki did not offer any testimony from Mostoufi or anyone else to prove otherwise. Moreover, the Chapter 7 Trustee had every opportunity to determine if the bankruptcy estate had an interest in these entities after he withdrew his initial, no-asset report. Again, the court finds that Kuchaki has not demonstrated by a preponderance of evidence that Malihi fraudulently failed to disclose interests in Pars and/or Omid on his bankruptcy schedules.

## II. The §523(a)(2)(A) Claims

Bankruptcy Code § 523(a)(2)(A) provides that "A discharge . . . does not discharge an

8

**MEMORANDUM DECISION**

Case: 11-05241   Doc# 94   Filed: 01/22/14   Entered: 01/22/14 14:19:08   Page 8 of 13

individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by - (A) false pretenses, a false representation, or actual fraud[.]" A creditor must establish five elements by a preponderance of the evidence to prevail on a § 523(a)(2)(A) claim: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman),* 234 F.3d 1081, 1085 (9th Cir. 2000). A §523(a)(2)(A) claim may also arise from the concealment or intentional non-disclosure of material facts. *In re Evans*, 181 B.R. 508, 515 n.6 (Bankr.S.D. Cal.1995). A debtor's knowledge and intent to deceive may be inferred by circumstantial evidence and from the debtor's conduct. *Edelson v. CIR*, 829 F.2d 828, 832 (9th Cir. 1987); *Donaldson v. Hayes (In re Ortenzo Hayes)*, 315 B.R. 579, 587 (Bankr. C.D. Cal. 2004).

A § 523(a)(2)(A) claim requires that the "target misrepresentation must have existed at the inception of the debt, and a creditor must prove that he or she relied on that misrepresentation." *Reingold v. Shaffer (In re Reingold)*, 2013 WL 1136546, at *5 (9th Cir. BAP Mar 19, 2013); *see also, New Falls Corp. v. Boyajian (In re Boyajian),* 367 B.R. 138, 147 (9th Cir. BAP 2007) (*citing Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill.2002)).

**A.     The South Carolina Transaction**

Malihi admitted that he did not return any of Kuchaki's $100,000 investment after his successful real estate flip, and instead used those funds to support himself. There is ample evidence that between 2006 and 2009 Malihi regularly told Kuchaki that his $100,000 was invested in real estate, when in fact, he had spent the funds on his personal expenses. Thus, there is little doubt that Malihi made material misrepresentations to Kuchaki. Bankruptcy Code § 523(a)(2)(A) requires, however, that Kuchaki establish that Malihi's misrepresentations were contemporaneous with the creation of Kuchaki's claim, *i.e.*, that Malihi's misrepresentations induced Kuchaki to advance him the funds.

No such evidence was introduced. There is no evidence that in August 2005 - when Kuchaki

9

**MEMORANDUM DECISION**
Case: 11-05241   Doc# 94   Filed: 01/22/14   Entered: 01/22/14 14:19:08   Page 9 of 13

invested his $100,000 with Malihi - Malihi made any material misrepresentation that induced Kuchaki to invest his funds with Malihi. In fact, it appears that Malihi's initial actions were entirely consistent with their arrangement: Malihi invested the $100,000 in South Carolina real estate which he sold for a profit. Malihi received $10,000 as his share of the profits in February 2006, and instructed Malihi to look for additional real estate in which to invest his $100,000 principal. There is also no evidence indicating that Malihi did not intend to re-invest the $100,000 when he received this further authorization from Kuchaki. Instead, it appears that Malihi's misrepresentations occurred after Kuchaki made his initial investment and authorized Malihi to retain the funds for further real estate deals.

Simply, Kuchaki did not offer any evidence suggesting that in February 2006, Malihi was unable or unwilling to re-invest the $100,000 as promised or that he intended to misappropriate the funds to pay his personal expenses. While Malihi did misrepresent the status of Malihi's $100,000 capital after February 2006, these misrepresentations did not induce Kuchaki into authorizing Malihi to re-invest the funds. Kuchaki therefore cannot establish that he relied on Malihi's misrepresentation at "the inception of the debt." *In re Boyajian*, 367 B.R. at 147. Accordingly, the § 523(a)(2)(A) claim is denied with respect to Malihi's initial advancement of the $100,000 on September 1, 2005, and his authorization for Malihi to re-invest the funds in February 2006.

### B. The Truck Transaction

At trial, Kuchaki failed to present any evidence, circumstantial or otherwise, that Malihi defrauded Kuchaki when he agreed to purchase the Truck. Other than the fact that Malihi breached his agreement to pay the $15,000, no other evidence was introduced regarding Malihi's failure to pay nor his intent when he purchased it. Accordingly, the court denies this §523(a)(2)(A) claim for relief.

### C. The Business Loan and the Rent Balance Claim

At trial, Kuchaki failed to present evidence that Malihi knowingly misrepresented his intent

to repay the Business Loan or his rent.[2]  Again, other than the fact that he breached these agreements, the evidence did not demonstrate that Malihi never intended to repay the Business Loan or his monthly rent.  Accordingly, the court denies these §523(a)(2)(A) claims for relief.

## II.     The §523(a)(4) Embezzlement Claim

Debts that arise from "embezzlement" are nondischargeable under § 523(a)(4) of the Bankruptcy Code.  Federal law defines the term embezzlement for purposes of § 523(a)(4).  *In re Wada*, 210 B.R. 572, 576 (9th Cir. BAP 1997).  To prevail on a §523(a)(4) embezzlement claim, a creditor must establish that (1) property owned by another is rightfully in the possession of a bankruptcy debtor; (2) the bankruptcy debtor appropriated such property to a use other than the use for which the property was entrusted to the bankruptcy debtor; and (3) there are circumstances indicating fraud on the part of the debtor.  *In re Mickens*, 312 B.R. 666, 680 (Bankr.N.D.Cal. 2004) (citations omitted).

Malihi argues in his post-trial brief that Kuchaki loaned him the $100,000, and that it was not an investment.  Malihi relies on the pre-petition Superior Court litigation between the parties, in which Kuchaki alleged in his verified complaint that he loaned this amount to Malihi.  Notwithstanding this verified allegation, Malihi contended in the Superior Court litigation that Kuchaki invested the $100,000 in his real estate investments, and the Superior Court stipulated judgment states that it was an investment.  The evidence at trial supports this contention, and the court finds that Kuchaki invested these funds with Malihi.

Given this finding, all of the remaining elements of an embezzlement fall into place.  Malihi held the $100,000 for investment purposes and misused the funds when he spent them on his personal expenses.  When Kuchaki asked him about the status of his investment, Malihi routinely

---

[2] Malihi claims that he partially repaid the Business Loan with four payments of $5,000 each in February, March, April and May of 2008.  Kuchaki, however, has argued that these payments relate to a separate loan.  Malihi offers no evidence, aside from his testimony, that these payments relate to the Business Loan.  Moreover, Malihi has acknowledged in the state court stipulated judgment that he owed the full amount of the Business Loan without any mention of the $20,000 partial payment.  Considering the evidence offered at trial, the court finds that Malihi's payments of $5,000 each in February, March, April and May of 2008 were unrelated to the Business Loan and did not reduce the outstanding $50,000 balance.

11

lied by telling him that they were tied-up in various real estate deals. Accordingly, this court finds that Malihi embezzled the $100,000.00 principal, and that Kuchaki is entitled to a $100,000.00 non-dischargeable judgment on this claim for relief.

### III. The 523(a)(4) Defalcation Claim

Debts that arise due to "fraud or defalcation" when a debtor is acting in a "fiduciary capacity" are nondischargeable under §523(a)(4) of the Bankruptcy Code. Whether a person is a fiduciary under § 523(a)(4) is a question of federal law." *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir.1996) (citing *Ragsdale v. Haller (In re Haller)*, 780 F.2d 794, 795 (9th Cir.1986)). Persons who are "partners" under California law "are fiduciaries within the meaning of § 523(a)(4)". *Ragsdale*, 780 F.2d at 796-797; *see also*, Cal. Corp.Code § 16404(b)(1) (partner has a duty to hold as trustee any "property, profit, or benefit derived" from partnership business or use of partnership property). Kuchaki argues that Malihi and him formed an "investment partnership" funded with his $100,000, which created a fiduciary relationship between them.

Cal. Corp. Code § 16202(a) defines a partnership as an "association of two or more persons to carry on as co-owners a business for profit . . ." Courts must also take into account whether the putative partners "intended to share in the profits, losses and the management and control of the enterprise." *In re Shart*, 2013 WL 1397401, at *8 (9th Cir. BAP, April 02, 2013) (citing *Bank of Cal. v. Connolly*, 36 Cal.App.3d 350, 364, 111 Cal.Rptr. 468 (Cal.Ct.App.1973)). The transactions involving Malihi's $100,000 investment did not create a partnership between the parties. First, there was no ongoing enterprise and no shared management. Malihi simply expected some return on his investment, and he did not seek nor was given any control over what real estate transaction generated the return. Nor did the parties agree to share any potential losses. Aside from asserting that the parties were partners, Kuchaki does not posit any other grounds which would have created a fiduciary relationship. Accordingly, the §523(a)(4) defalcation claim is denied.

### CONCLUSION

Kuchaki shall submit a proposed judgment consistent with this court's memorandum decision.

\* \* END OF ORDER \* \* \*

**COURT SERVICE LIST**

Recipients are ECF participants